531 P.2d 1203

**STATE of New Mexico ex rel. Edward GONZALES, Petitioner-Appellant,**

v.

**Jerry MANZAGOL, State Personnel Director, S. E. Reynolds, State Engineer, and the State of New Mexico, Respondents-Appellees.**

**No. 10038.**

Supreme Court of New Mexico.

Jan. 31, 1975.

Arthur H. Coleman, Bob Barberousse, Sante Fe, for petitioner-appellant.

David L. Norvell, Atty. Gen., W. Royer, Asst. Atty. Gen., Sante Fe, for respondents-appellees.

## OPINION

OMAN, Justice.

Petitioner Gonzales sought to have Respondents Manzagol, State Personnel Director (Director), and Reynolds, State Engineer (Engineer), prohibited from discharging Petitioner from his employment by the State. He failed in the district court, and has appealed. We affirm.

At all material times, Petitioner was a resident and duly qualified elector of the City and County of Sante Fe and an em-

ployee of the State of New Mexico as a Water Resource Assistant in the Office of the Engineer. This was a non-exempt (classified) position under the State Personnel Act, §§ 5-4-28 to 5-4-46, inclusive, N.M.S.A.1953 (Repl. Vol. 2, pt. 1, 1974), and was governed by the rules and regulations of the State Personnel Board.

On about January 9, 1974, Petitioner was appointed to and began serving on the Sante Fe City Council, which is the governing body of the City. On January 29, he became a candidate for election to that office, ran with a slate of candidates known and designated on the election ballot as "Volunteers for Sante Fe," was elected, and is presently serving and intends to continue serving as a City Councilman. The Director and the Engineer propose to dismiss Petitioner from his State employment as a Water Resource Assistant pursuant to § 5-4-42(B), N.M.S. A.1953 (Repl. Vol. 2, pt. 1, 1974).

Petitioner relies upon four points for reversal. The first is his claim that he is not prohibited by § 5-4-42(B), supra, from continuing his State employment while simultaneously serving as a City Councilman. This section of our statutes provides:

> "No person in the personnel office, or employee in the service [an employee covered by the Personnel Act, supra], shall hold political office or be an officer of a political organization during his employment. For the purposes of the Personnel Act * * *, being a member of a local school board shall not be construed to be holding political office, and being an election official shall not be construed to be either holding political office, or being an officer of a political organization. Nothing in the Personnel Act shall deny employees the right to vote as they choose and to express their opinions on political subjects or candidates."

There is no question about Petitioner's being an employee covered by the Personnel Act, or that he sought and now occupies the office of City Councilman.

However, he does claim that the office of City Councilman is not a "political office." Whether or not this is a "political office" depends entirely upon what is meant by "political" within the contemplation of the proscription contained in § 5-4-42(B), supra.

Webster's Third New International Dictionary, Unabridged 1755 (1961) defines "political" as:

> "1a: of or relating to government, a government, or the conduct of governmental affairs b: of or relating to matters of government as distinguished from matters of law * * * c: engaged in civil as distinguished from military functions * * * d: of, relating to, or concerned with the making as distinguished from the administration of governmental policy."

"Political" is defined in 3 Bouvier's Law Dictionary 2626 (3d rev. ed. 1914) as follows:

> "Pertaining to policy, or the administration of government. Political rights are those which may be exercised in the formation and administration of the government: they are distinguished from civil rights, which are the rights which a man enjoys as regards other individuals, and not in relation to the government."

A "political office" is defined in Black's Law Dictionary 1235 (4th rev. ed. 1968) as:

> "Civil offices are usually divided into three classes,—political, judicial, and ministerial. Political offices are such as are not immediately connected with the administration of justice, or with the execution of the mandates of a superior, such as the president or the head of a department."

The governing body of the City of Santa Fe consists of the Mayor and Councilmen. Section 14-11-2(D), N.M.S.A.1953 (Repl. Vol. 3, 1968). The powers and duties of this governing body are enumerated in §§ 14-11-3, 14-11-4, N.M.S.A.1953 (Repl. Vol. 3, 1968).

Although Petitioner did not run as a nominee of a generally recognized, continuing political party, no such limitation is provided in § 5–4–42(B), supra. He did run as a member of an organized slate of candidates which adopted a name and a platform, solicited funds to support the election of the slate, and advertised as a slate.

It is apparent to us that the office which Petitioner sought, to which he was elected, and which he now holds, clearly falls within the definition of a "political office." Accord, Norton v. Letton, 271 Ky. 353, 111 S.W.2d 1053 (1937); State v. City of Cleveland, 33 N.E.2d 35 (Ohio App.1940); Moldoveanu v. Dulles, 168 F.Supp. 1 (E. D.Mich.1958). We cannot agree with Petitioner's contention that § 5–4–42(B), supra, was directed solely at the evil of organized political party activities. The language of the statute neither compels nor implies this construction of the term "political."

■ Petitioner next contends that the foregoing stated interpretation of § 5–4–42(B), supra, is prohibited by art. 7, § 2, subds. A and B of the New Mexico Constitution, which provides:

*"Sec. 2 [Qualifications for holding office.]*

"A. Every citizen of the United States who is a legal resident of the state and is a qualified elector therein, shall be qualified to hold any elective public office except as otherwise provided in this Constitution.

"B. The legislature may provide by law for such qualifications and standards as may be necessary for holding an appointive position by any public officer or employee."

The argument is that to require him to resign his State employment is to impose an unconstitutional restriction on him as an elected public officer. He relies upon our holding in Givvany v. Ford, Mayor, et al., 29 N.M. 621, 225 P. 577 (1924). That holding has no relevancy to the issue in this case. No effort is being made to impose any restriction upon the elective public office which Petitioner holds or upon him as the holder of that office. It is his appointive position as a "public officer or employee" which is in danger by his persistent action in holding a "political office." Clearly, the Legislature had the constitutional power under art. 7, § 2, subd. B, supra, to enact § 5–4–42(B), supra, and to thereby provide, as a qualification or standard for his continued employment by the State in a position covered by the State Personnel Act, that he not hold "political office." Compare United Public Workers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947).

■ Petitioner's third point, although more broadly stated, is in fact a claim that § 5–4–42(B), supra, violates the freedom of speech guarantee of the first amendment to the United States Constitution. The specific claim is that this section of our statutes is overly broad and does not allow first amendment freedoms the needed breathing space recognized in Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963) and Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

The N.A.A.C.P. and Cantwell cases, although concerned with first amendment rights, were not concerned with political activity or service in a political office by employees or officers of the executive branch. In Broadrick, a section of Oklahoma's Merit System of Personnel Administration Act was under attack. As stated by the court, in affirming a decision of the district court upholding the Oklahoma statute, "[t]he section [of the Oklahoma Act involved] serves roughly the same function as the analogous provisions of the other 49 States, and is patterned on § 9(a) of the Hatch Act." The New Mexico statute, listed as being analogous to the Oklahoma statute and patterned after § 9(a) of the Hatch Act, is § 5–4–42, N.M.S.A. 1953

(Repl. Vol. 2, pt. 1, 1974). The particular portion of the Oklahoma statute comparable to that portion of § 5–4–42(B), supra, with which we are here concerned, reads: "No employee in the classified service shall be * * * a candidate for nomination or election to any paid public office * * *."

Petitioner particularly contends that § 5–4–42, supra, prohibits countless activities, other than those in which he was engaged, and, thus, is constitutionally overbroad and must be declared void. In this regard, the Supreme Court in the Broadrick case, 413 U.S. at 610–15, 93 S.Ct. at 2915–18, 37 L. Ed.2d at 838–42, in disposing of a like contention, had the following to say:

> "They nevertheless maintain that the statute is overbroad and purports to reach protected, as well as unprotected conduct, and must therefore be struck down on its face and held to be incapable of any constitutional application. We do not believe that the overbreadth doctrine may appropriately be invoked in this manner here.

> "Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court. See, e. g., Austin v. The Aldermen, 7 Wall. 694, 698–699, 19 L.Ed. 224 (1869); Supervisors v. Stanley, 105 U.S. 305, 311–315, 26 L.Ed. 1044 (1882); Hatch v. Reardon, 204 U.S. 152, 160–161, 27 S.Ct. 188, 190–191, 51 L.Ed. 415 (1907); Yazoo & Miss. Valley R. v. Jackson Vinegar Co., 226 U.S. 217, 219–220, 33 S.Ct. 40, 41, 57 L.Ed. 193 (1912); United States v. Wurzbach, [supra], [280 U.S. 396,] at 399, [50 S.Ct. 167, 169] 74 L.Ed. 508; Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 513, 57 S.Ct. 868, 874, 81 L.Ed. 1245, 109 A.L.R. 1327 (1937); United States v. Raines, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960). A closely related principle is that constitutional rights are personal and may not be asserted vicariously. See McGowan v. Maryland, 366 U.S. 420, 429–430, 81 S.Ct. 1101, 1106–1107, 6 L.Ed.2d 393 (1961). These principles rest on more than the fussiness of judges. They reflect the conviction that under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws. See Younger v. Harris, 401 U.S. 37, 52, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). * * *

> "In the past, the Court has recognized some limited exceptions to these principles, but only because of the most 'weighty countervailing policies.' United States v. Raines, 362 U.S., at 22–23, 80 S.Ct., at 523–524, 4 L.Ed.2d 524. * * Another exception has been carved out in the area of the First Amendment.

> "It has long been recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society. Herndon v. Lowry, 301 U.S. 242, 258, 57 S.Ct. 732, 739, 81 L.Ed. 1066 (1937); Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960); * * *.

> "* * *.

> "It remains a 'matter of no little difficulty' to determine when a law may properly be held void on its face and when 'such summary action' is inappropriate. Coates v. Cincinnati, 402 U.S. 611, 617, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971) (separate opinion of Black, J.). But the plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' towards

conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction —cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe. Cf. Alderman v. United States, 394 U.S. 165, 174–175, 89 S.Ct. 961, 966–967, 22 L.Ed.2d 176 (1969). To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. * * *"

See also CSC v. Letter Carriers, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973), which was decided the same day as Broadrick v. Oklahoma, supra, but which involved the constitutionality of the Hatch Act, rather than that of a state statute patterned thereafter.

In addition to the generally recognized dangers inherent in political activity by a state officer or employee, the fact that Petitioner is serving on the governing body of the City of Santa Fe may very well place him in a position of conflict with his state employment in regard to water rights claimed by the City of Santa Fe. Proper performance of his duties as a City Councilman and also as a Water Resource Assistant is almost certain to create conflicting demands upon his time, his energies, his capacities and his loyalties.

In our opinion, the provisions of § 5–4–42(B), supra, are not constitutionally vague or overbroad, and the proscription which Petitioner seeks to evade constitutes a reasonable standard or restriction upon his employment by the State. Nothing said

in Minielly v. State, 242 Or. 490, 411 P.2d 69 (1966), in Kinnear v. City etc. of San Francisco, 61 Cal.2d 341, 38 Cal.Rptr. 631, 392 P.2d 391 (1964), or in Fort v. Civil Service Com'n of County of Alameda, 61 Cal.2d 331, 38 Cal.Rptr. 625, 392 P.2d 385 (1964) upon which Petitioner relies, persuades us to the contrary. The restraints upon first amendment rights which were involved in those cases are not comparable to the statutory proscription or to the activities of Petitioner with which we are here concerned.

■ Petitioner's final contention is that § 5–4–42, supra, denies him equal protection of the law, as guaranteed by the fourteenth amendment to the United States Constitution, in that the prohibitions of said statute do not apply to exempt employees or to service by non-exempt employees on local school boards. He relies entirely upon the following quoted language from Wieman v. Updegraff, 344 U.S. 183, 192, 73 S.Ct. 215, 219, 97 L.Ed. 216, 222 (1952):

"It is sufficient to say that constitutional protection does extend to the public servant whose exclusion pursuant to statute is patently arbitrary or discriminatory."

■ We fail to understand how this language can help Petitioner under the facts of this case. We are not confronted with a patently arbitrary or discriminatory statute. We are not inclined, upon the simple presentation of this quoted language from the Wieman case, to hold the classifications of exempt and non-exempt employees under our Personnel Act, or the exemption of local school boards from the category of "political offices," constitute patently arbitrary or discriminatory classifications, or that these classifications and this exemption constitute violations of the equal protection clause of the fourteenth amendment. The burden was on Petitioner to show that persons similarly situated are treated differently in an impermissible manner. An unequal protection claim may not be made in the abstract. A claimant must show how he is unequally treated be-

fore an issue arises. State v. Hines, 78 N.M. 471, 432 P.2d 827 (1967). As to the validity of classifications of exempt and non-exempt employees under a personnel act such as ours, see generally, Broadrick v. Oklahoma, supra; United Public Workers v. Mitchell, supra; Johnson v. State Civil Service Dept., 280 Minn. 61, 157 N. W.2d 747 (1968); United Federal Workers of America v. Mitchell, D.C., 56 F.Supp. 621 (1944).

The order dissolving the alternative writ of prohibition should be affirmed.

It is so ordered.

STEPHENSON and MONTOYA, JJ., concur.