Rocky Dale DUNCAN, Appellant,

v.

CITY OF FAIRBANKS, Appellee.

No. 2953.

Supreme Court of Alaska.

Aug. 12, 1977.

**312**

Richard D. Savell and Peter J. Aschenbrenner, Aschenbrenner & Savell, Fairbanks, for appellant.

James P. Doogan, Jr., Deputy City Atty., and Steven J. Call, Acting City Atty., Fairbanks, for appellee.

Before BOOCHEVER, Chief Justice, RABINOWITZ, CONNOR and BURKE, Justices, and DIMOND, Justice Pro Tem.

## OPINION

DIMOND, Justice Pro Tem.

Rocky Dale Duncan was a City of Fairbanks fireman, who was summarily discharged from his job. In this action, he claims his dismissal violated the Fairbanks Code of Ordinances and the due process provisions of the federal and state constitutions. The trial court held against Duncan and granted summary judgment in favor of the City. Duncan has appealed.

On January 24, 1972, the City hired Duncan as a fire fighter under a federally-funded Public Employment Program (PEP). On May 1, 1973, after fifteen months under the PEP program, Duncan became a regular City employee, paid from City funds. His duties did not change. On November 8, 1973, the fire chief told Duncan he was being dismissed at once and that there was no hearing or appeal procedure available to him.[1]

The Fairbanks Code of Ordinances divides the City work force into a classified service and an exempt service.[2] A grievance-appeal procedure is provided for personnel in the classified but not the exempt service.[3] The exempt service includes "temporary full-time employees."[4] When Duncan was hired under the PEP program, he was designated as a temporary employee, who worked full time. Therefore, he was in the exempt service.

When Duncan was removed from the PEP program, he continued as a City fireman and was promoted to "permanent status." Since the municipal code includes in the exempt service "temporary full-time employees," by implication, a full-time "permanent" employee, such as Duncan had become, would be in the classified service.

1. The fire chief did not state specific reasons for Duncan's dismissal. However, at Duncan's request, he was shown letters of complaint the fire department had received about his performance, but with the names of the complainants deleted. All of the complaints appear to have come through city interdepartmental channels. Three accused Duncan of driving an ambulance in a reckless manner, and the fourth stated that his hair was too long. Duncan was not aware of the complaints until he was discharged. The identity of the senders of the complaints is nowhere disclosed in the record, but three of the letters indicate that the complainants had told Duncan of their complaints, but that his conduct had not improved.

2. Fairbanks Code of Ordinances § 2.504 provides:

> All offices and positions of the city shall be and are hereby allocated to either the classified or the exempt service.
> The exempt service shall include all elected officials and members of citizen boards and commissions, employees covered by contracts, part-time employees, temporary full-time employees and all other personnel appointed to serve without compensation. The classified city service which are not specifically placed in the exempt service by this article. [sic] Unless specifically designated otherwise, personnel policies and rules shall apply only to employees of the classified service.

Sec. 2.504 was amended in 1973. The amendment deleted a list of certain administrative officers and is not relevant to this case.

3. Fairbanks Code of Ordinances § 2.514 provides:

> Any regular employee who is suspended, demoted, or dismissed may appeal to the commission on ethics and employee appeals within thirty (30) days after such action is taken. The personnel rules and regulations shall establish an appeal procedure.

4. Fairbanks Code of Ordinances § 2.504, *supra* note 2.

However, another part of the Code provides that "all original and promotional appointments" shall be for a probationary period.[5] Therefore, even though Duncan had served for fifteen months as a temporary full-time employee under the PEP program and was promoted to permanent status on May 1, 1973, he was, nevertheless, required to serve for an additional time as a probationary employee. During that probationary period, Duncan was subject to being dismissed "at any time without right of appeal or hearing in any manner."[6]

As to the period of probation, § 2.512 of the Code provides in part that:

> The rules and regulations shall provide all original and promotional appointments shall be for a probationary period of six (6) months nor more than twelve (12) months.

The City's Personnel Rule VI provides, as to probation:

> (2) *Duration.* The probationary period shall be six (6) months nor more than twelve (12) months.[7]

The foregoing language is ambiguous. Although an employee of the City may be able to ascertain from reading the language of the Code and the rule that he must serve a minimum probationary period of six months, it is not at all clear whether his probationary status ends at that time, or whether it extends for some indefinite period between six and twelve months.

The City contends that Duncan's probationary period was for one year because this was the policy of the City for all employees in the fire and police departments. In support of this statement of purported fact, the City refers to a portion of the transcript of the proceedings in the superior court. It is true that the attorney who represented the City below stated that "[t]he city manager, under the general authority to administer the employee regulations . . . has determined that the probationary period for employees of the police and fire departments is one year. . . ."

This statement does not resolve the ambiguity with which we are concerned. First of all, the statement was merely a portion of an argument being made by counsel for the City during the course of proceedings in the superior court. Secondly, even if the city manager had adopted such a policy, it is not at all clear that he had the authority to construe § 2.512 of the Code and Rule VI of the Personnel Rules so as to impose a probationary period of twelve months on policemen and firemen and some lesser period of probation on other employees.[8] Whatever the city manager's policy may have been, or will be in the future, the fact remains that the language "[t]he probationary period shall be six (6) months nor more than twelve (12) months" is ambiguous; it does not tell a prospective or existing city employee with any degree of certainty for what period beyond the six months and less than twelve months his probationary status will exist.

As in the case of legislative enactments, municipal ordinances adopted by the "legislative branch" of the City which are ambiguous will be construed so as to favor individual rights.[9] This rule of construction is similar to the rule that, in interpreting contracts, ambiguities are to be construed against the party who supplies and drafts a

---

5. Fairbanks Code of Ordinances § 2.512 provides:

> The rules and regulations shall provide all original and promotional appointments shall be for a probationary period of six (6) months nor more than twelve (12) months. During this probationary period an employee may be dismissed at any time without right of appeal or hearing in any manner. The employee dismissed during the probationary period from a position to which he has been promoted may be reinstated to the position from which he had been promoted unless charges are filed and he is discharged as provided in this article and the rules.

6. *Id.*

7. Fairbanks Code of Ordinances § 2.523.

8. Had evidence been introduced that the City Council had passed a resolution establishing the probationary period, the case would be in a different posture.

9. *See* 2A Sands, Sutherland Statutory Construction § 58.04 at 469 (4th ed. 1973).

form contract.[10] The principle supporting this rule, as for example in contracts of insurance, is that the bargaining power of the parties is unequal in that the insured is presented with a form policy and has no choice as to its provisions.[11]

We are presented with a similar situation here. The City and Duncan were not in positions of equal bargaining power with respect to the provisions of enacted ordinances and rules and regulations adopted under the authority of the ordinances. When Duncan was placed on the City payroll after fifteen months under the PEP program, he had no "bargaining power" at all with respect to the personnel rule governing the length of time he would occupy probationary status. He either had to accept the rule's provision and remain as a fireman or reject it and lose his job.

In such a situation of unequal bargaining power, and considering how long Duncan had been on the job as a fire fighter, we must construe the ambiguous provisions of the Code and Rule VI against the City and in favor of affording Duncan the right to appeal his dismissal. He is entitled to the remedies which are afforded to non-probationary employees in the classified service.

As stated in Rule VI, the probationary period of employment is "an integral part of the examination process." Its stated object is:

> to observe closely the employee's work, to secure the most effective adjustment of a new or promoted employee to his position, and to reject any employee whose performance does not meet required work standards.[12]

The purpose of probation is to allow the City an adequate opportunity to observe the quality of an employee's performance. Duncan's performance of his duties during the six-month period from May 1 to November 1, 1973, when considered with the fact that he had performed the same duties for a period of fifteen months prior to May 1, 1973, was clearly regular and substantial enough to afford an intelligent evaluation of Duncan's abilities as a fireman.[13] Under the circumstances presented in this case, we construe the language "[t]he probationary period shall be six (6) months nor more than twelve (12) months" to mean that Duncan's probationary period was for the minimum six-month period of time. Considering the purpose behind the probationary period, it would make little sense to construe the language of Rule VI to impose on Duncan probationary status for twelve months, when by the time the six-month period had expired in November 1973, Duncan had had a total of 21 months of continuous experience as a City fire fighter.

In support of its position that Duncan was a probationary employee for one year after May 1, 1973, rather than six months, the City points to Duncan's "payroll change" form. On the form the following language had been inserted: "Remove from PEP Program and promote to permanent status. *Probationary one year.*" (Emphasis added).

The italicized language in the payroll change form does not change the result we have reached. It merely represents a City employee's interpretation of the rule regarding probationary status. We have interpreted the rule otherwise. We have concluded that Duncan's probationary period was for six months (from May 1 to November 1, 1973). When he was summarily dismissed on November 8, 1973, he was enti-

---

10. *Wessells v. State,* 562 P.2d 1042, 1050 (Alaska 1977). Similarly, where the local government agency has selected the language of the contract clause in dispute, any doubt or ambiguity will be resolved in favor of the private party. 1A C. Antieu, Municipal Corporation Law § 1056 at 801 (1974).

11. *Hahn v. Alaska Title Guaranty Co.,* 557 P.2d 143, 144–45 (Alaska 1976). Courts have increasingly recognized the inequalities of the employer-employee relationship—as shown by judicial treatment of statutes designed to equalize bargaining power. *See* Sands' Sutherland Statutory Construction § 71.07 (4th ed. 1973).

12. Fairbanks Code of Ordinances § 2.523, Personnel Rules and Regulations, Rule VI(1).

13. *See State v. Redman,* 491 P.2d 157, 159 (Alaska 1971).

tled to all of the benefits of the grievance and appeal procedures set out in the Fairbanks Code of Ordinances and the rules and regulations adopted under the ordinances to the same extent as any other non-probationary employee in the classified service.

The summary judgment in favor of the City of Fairbanks is reversed, and the case is remanded for further proceedings not inconsistent with the views expressed in this opinion.

REVERSED AND REMANDED.

CONNOR, Justice, dissenting.

I respectfully dissent.

It is my opinion that Duncan could not obtain any kind of tenure through his employment under the PEP program. That program provides only temporary funding for public employees. When the unemployment rate declines, PEP funding is to be removed and efforts are to be made to find other jobs for those employed under the program. See 42 U.S.C. Sec. 4871 et seq., and Sec. 4480(a)(2). As a temporary worker under the PEP program Duncan could not rightfully expect that his employment would be counted as fulfilling any part of his probationary period if and when he gained a permanent appointment. We must consider, therefore, what rights Duncan can assert under the city ordinances.

Unlike my colleagues, I interpret Sec. 2.512 of the Code as meaning that city officials may fix an employee's probationary period at any period between six and twelve months.

When Duncan was placed on permanent status in the classified status his payroll change form stated that he would be subject to a probationary period of one year. He was plainly put on notice of the terms of his appointment. This being so, it is unreasonable to resort to the ambiguity of Sec. 2.512 of the Code to enhance Duncan's status. Were his appointment indefinite as to the probationary term I would view the matter otherwise, and would hold that he can take advantage of the ambiguity to gain protected status after only six months. But that is not the case before us.

Duncan does not claim that he was singled out arbitrarily and subjected to a probationary period different from that applying to other firemen. In the circumstances he should not be permitted to take advantage of the ambiguity in the city ordinance.

For the reasons given, I would affirm the judgment below.