CHARLES J. JOHNSON v. STATE CIVIL SERVICE DEPARTMENT.

157 N. W. (2d) 747.

March 29, 1968—No. 40,750.

*David W. Thurston,* for appellant.

*Douglas M. Head,* Attorney General, and *James A. Anderson,* Special Assistant Attorney General, for respondent.

ROGOSHESKE, JUSTICE.

This appeal challenges the constitutionality of the concluding paragraph of Minn. St. 1965, § 43.28, of the State Civil Service Act prohibiting political activities of employees in the classified service of the state. It provides:

"Except as herein provided any officer or employee in the state classified service shall resign from the service upon filing as a candidate for public office. Officers or employees in the state classified service may be candidates for and occupy a village, township, or school district office if the office is one for which no compensation is provided." [1]

From July 18, 1956, to August 2, 1966, petitioner-appellant was

---

[1] The first paragraph of Minn. St. 1965, § 43.28, provides: "No officer or employee holding a position in the classified service of this state shall, directly or indirectly, solicit or receive, or be in any manner concerned in soliciting or receiving, any assistance, assessment, or subscription, whether voluntary or involuntary, for any political purpose or for any political party or affiliate thereof. No officer or employee in the classified service shall be a delegate or alternate to any political convention. No officer, agent, clerk, or employee of this state shall, directly or indirectly, use his authority or official influence to compel any officer or employee in the classified service to apply for membership in or become a member of any organization, or to pay or promise to pay any assessment, subscription, or contribution, or to take part in any political activity. Any person who violates any provision of this section shall be guilty of a misdemeanor, and shall be punished accordingly, and if any officer or employee in the classified service is found guilty of violating any provision of this section, he is automatically separated from the service."

a permanent employee of the state working full-time in a position classified as Clerk II in the Motor Vehicle Division of the secretary of state's office in St. Paul. His salary was $356 per month. Aware of the restriction against filing as a candidate for public office and intending to challenge its validity, petitioner filed for the office of clerk of district court of Wabasha County on July 17, 1966. At this time his duties consisted of giving automobile title information to state and local law-enforcement agencies. Upon his failure to resign, his employment was terminated by a letter of dismissal from his appointing authority, the secretary of state. He appealed to the State Civil Service Board, and after a hearing the board affirmed his dismissal. Upon his petition for review to the district court, the decision of the board was affirmed.

Petitioner contends that he is entitled to reinstatement and back wages because the provision as applied to him violates the Federal Constitution in that it too broadly and without the required justification deprives him of his First Amendment rights to freedom of speech and association, and because the exclusion of specified noncompensated offices is arbitrary and discriminatory in violation of his right to equal protection of the laws guaranteed by the Fourteenth Amendment.

Summarizing his arguments, he urges that the First Amendment (binding upon the states through the Fourteenth Amendment) protects his right to file for public office as a form of his rights of freedom of expression and association, and that these rights are being unreasonably restricted without the state's showing a compelling need to protect a clear public interest which is directly and substantially threatened by the proscribed activity. He further argues the supposed evils sought to be prohibited are not present in his case, since the public office for which he filed is located 100 miles from his place of employment and is nonpartisan. He points out that none of his fellow employees is a voter in Wabasha County and that his state duties involve no policy-making function. He insists that his candidacy would be neither disruptive of the performance of his duties nor affect the efficiency, integrity, and impartiality of the competitive classified service of the state. Finally, he asserts that the provision unreasonably excludes from the sanction of dismissal certain noncompensated local offices, the filing for which could produce the

same evils sought to be prohibited, and that the statute thus denies equal protection of the laws by laying an uneven hand upon employees for engaging in the same type of prohibited conduct.

It should be borne in mind that, unlike similar civil-service restrictive statutes recently declared invalid in California and Oregon, the challenged provision of Minn. St. 1965, § 43.28, was intended neither as a sweeping prohibition against an officer or employee taking "any part in political management or affairs in any political campaign or election * * * other than to cast his vote or to privately express his opinion" nor as an absolute prohibition against his filing as a candidate for all Federal, state, and local public offices. Nor does a violation result in a forfeiture of "all right to the public office for which he is a candidate." Ore. Rev. Stat. 241.990(3). On the contrary, § 43.28, read as a whole, prohibits specific practices generally accepted as most likely to interfere with the efficient and impartial discharge of the duties of all merit-system officers and employees. Briefly, it proscribes solicitation and receipt of funds for any political purpose or for any political party; serving as a delegate or alternate to a political convention;[2] the use of authority or official influence to compel membership in any organization or to compel contributions to, or participation in, any political activity; and, finally, filing as a candidate for a public office other than those specifically excepted.

However, even though an employee is not expressly prohibited from seeking public office, the requirement that he resign upon filing as a candidate—and, by implication, that he be dismissed upon a failure to do so—does have the effect of infringing upon the First Amendment rights of employees to the extent that it prohibits an employee from running for certain public offices as one means of political expression. It does so, however, only to the extent of forbidding unbridled political expression and activity when an employee files for a compensated public office. It otherwise leaves untouched full participation by employees in the discussion and decision of political questions. Thus, the focal impact of the restriction is not so much an intrusion upon an employee's First Amendment rights of free speech as a limitation upon his running for public

---

[2] Ex. Sess. L. 1967, c. 39, removed this proscription.

office in furtherance of his own political career or in furtherance of his own political views as a candidate during the campaign.

An understanding of this sensitive area in which the individual's freedom ends and the state's power begins requires acceptance of the threshold principle that the right to run for public office when employed as a means of expressing an individual's political view is protected against infringement by the First Amendment.[3] We may concede, as a matter of argument, that the provision challenged by petitioner is undesirably restrictive— as is likely indicated by the changes made by the last legislature.[4] Nevertheless, we are not persuaded that the more restrictive regulation, here resulting in petitioner's dismissal, was constitutionally repugnant.

It is fundamental that there exists no constitutional right to government employment (Adler v. Board of Education, 342 U. S. 485, 72 S. Ct. 380, 96 L. ed. 517, 27 A. L. R. [2d] 472), and a state may, as a condition of employment, require compliance with any reasonable and nondiscriminatory restriction upon the activities of its employees in the exercise of rights to which state employees as citizens might otherwise be constitutionally entitled. United Public Workers v. Mitchell, 330 U. S. 75, 67 S. Ct. 556, 91 L. ed. 754; Slochower v. Board of Education, 350 U. S. 551, 76 S. Ct. 637, 100 L. ed. 692. The numerous cases which have considered the problem indicate that to meet the requirements of reasonableness it must be shown not only that the restriction is not arbitrary or discriminatory but also that it serves a manifest public interest by protecting against a clear, substantial, and direct threat to the efficiency, integrity, morale, and discipline of state employees and the merit system under which they are recruited, their performance evaluated, and their ten-

---

[3] Minielly v. State, 242 Ore. 490, 411 P. (2d) 69.

[4] The 1967 legislature in Ex. Sess. L. 1967, c. 39, greatly reduced the limitation by amending the concluding paragraph of § 43.28: "Except as herein provided any officer or employee in the state classified service shall be eligible for leave of absence from the service not to exceed one year upon becoming a candidate for public office. Officers or employees in the state classified service may be candidates for and occupy a city, county, village, township or school district office without taking a leave of absence if such compensation for such office does not exceed $600 per year and if holding such office will not conflict with such regular state employment."

ure assured. In applying this test, we are mindful that the First Amendment rights are preferred rights. Thus, any provision of law restricting such rights does not bear the usual presumption of constitutionality normally accorded to legislative enactments. The burden rests upon the state to show a compelling public need to protect a substantial public interest. See, Thornhill v. Alabama, 310 U. S. 88, 60 S. Ct. 736, 84 L. ed. 1093.[5]

Applying these principles, we are satisfied that a sufficient showing has been made to justify holding the provision under attack constitutionally permissible. The provision had its inception with the adoption of a civil-service merit system for state employees in 1939. Its basic objective was to establish merit as the paramount consideration for the recruitment, advancement, and discipline of persons employed by the state in order to promote an efficient and impartial administration of the public business. In furtherance of this objective, as we have previously observed in State ex rel. Duren v. Patterson, 234 Minn. 432, 436, 48 N. W. (2d) 574, 576, the underlying purpose of the restriction is "to obviate the evils which necessarily follow when officers or employees in the classified service of the state are permitted to engage in political activity to the extent of running for office."

We are persuaded that the legislature could justifiably determine that the evils referred to constitute a direct threat to the objectives and purposes of a merit system. It could reasonably conclude that to allow employees in the competitive classified service to run for offices which are usually sought for the purpose of earning a livelihood or advancing one's political career would interfere with the efficient and impartial administration of public business by exposing employees and the merit system to the same type of political activities and abuses inherent in a spoils system which the merit system was designed to obviate. Obviously, the legislature could conclude that campaigning for such offices would inevitably interfere with the employee-candidate's time, energy, and devotion to his official duties. No one acquainted with the demands of a campaign for a county office, such as clerk of court, would deny that such demands

---

[5] See, also, Thomas v. Collins, 323 U. S. 516, 65 S. Ct. 315, 89 L. ed. 430, rehearing denied, 323 U. S. 819, 65 S. Ct. 557, 89 L. ed. 650; Sherbert v. Verner, 374 U. S. 398, 83 S. Ct. 1790, 10 L. ed. (2d) 965.

could, and most likely would, affect a candidate's regular job performance. Undoubtedly, the legislature was not unaware of the probability that an employee seeking such an office could use the prestige of the office he was seeking or his state office to gain special treatment from his superiors—such as leaves of absence and special work assignments—or that his campaign activities would promote or retard his advancement. Further, the legislature doubtless foresaw both the probability of the employee's using his state employment to favor those who might directly or indirectly aid him in his campaign, and, in the context of the rather unique nature of the political structure in this state, where most elective offices (including the legislative offices and all elective county offices) are declared by statute to be "nonpartisan," [6] the probability of his exposure to involvement in partisan political activities—with all the potentially disruptive abuses that such involvement could produce.

While these and many other conceivable abuses may not materialize in every case, the threat the legislature may have feared most was the cumulative effect on the morale and efficiency of all employees by the campaign activities of those who, absent the restriction, would file for office and thereby either directly encourage others to do so or, by their example of the advantages to be gained, induce them to engage in political activities inconsistent with the objectives of the merit system and the efficient and impartial discharge of official duties.[7] To forestall the probability of these and other abuses is, in the judgment of the legislature, the compelling need justifying the restriction.

Contrary to petitioner's argument, the fact that it is conceivable that the provision may be applied in situations in which the abuses referred to would not exist does not compel a determination of unconstitutional invalidity for overbreadth. N. A. A. C. P. v. Button, 371 U. S. 415, 83 S. Ct. 328, 9 L. ed. (2d) 405. In determining the scope of the restriction, the legislature was confronted with the fact previously noted that most public offices in this state are declared to be "nonpartisan." By taking into account its peculiar awareness of the political activities

---

[6] Minn. St. 202.03.

[7] United Public Workers v. Mitchell, 330 U. S. 75, 101, 67 S. Ct. 556, 570, 91 L. ed. 754, 773.

required of a candidate for a "nonpartisan" compensatory office, and by limiting the restriction to offices generally regarded as providing full-time employment as distinguished from part-time offices generally regarded as obligations of citizenship which are unlikely to expose an employee or the classified service to threats of political abuse, the legislature appears to have drawn the restriction as narrowly as possible in a constitutional sense to accomplish the purpose intended. While a citizen has a constitutional right to free political expression, he does not have a constitutional right to state employment. Where a restriction on state employment is reasonable, even though the legislature may later regard it as undesirably broad, it is constitutionally permissible.

Counsel for petitioner conceded in oral argument that the cases he cites as controlling are distinguishable from the case at bar. Minielly v. State, 242 Ore. 490, 411 P. (2d) 69, and Kinnear v. City and County of San Francisco, 61 Cal. (2d) 341, 38 Cal. Rptr. 631, 392 P. (2d) 391, involved a statute and a charter, respectively, both of which completely prohibited any candidacy. Moreover, the Oregon statute (Ore. Rev. Stat. 241.990[3]) worked a forfeiture of the offending employee's future right to be a candidate for the office for which he had filed, in violation of the First and Fourteenth Amendments to the Federal Constitution. These factors are not present in this case.

Petitioner's suggestion that the statute results in a denial to him of the equal protection of the laws under the Fourteenth Amendment is not persuasive. That ground is not a favored constitutional argument. Buck v. Bell, 274 U. S. 200, 47 S. Ct. 584, 71 L. ed. 1000; Patsone v. Pennsylvania, 232 U. S. 138, 34 S. Ct. 281, 58 L. ed. 539. The equal protection clause does not command that either all evils of the same kind be eradicated by a statute or none at all. Central Lbr. Co. v. South Dakota, 226 U. S. 157, 33 S. Ct. 66, 57 L. ed. 164. Moreover, distinctions which result from the application of the law are not unreasonable under the equal protection clause where any state of facts can be conceived which would sustain them. New York Rapid Transit Corp. v. City of New York, 303 U. S. 573, 58 S. Ct. 721, 82 L. ed. 1024; cf. Railway Exp. Agency, Inc. v. New York, 336 U. S. 106, 69 S. Ct. 463, 93 L. ed. 533. The distinction in the statute before us between uncompensated village, township, and school district offices

and all others surely meets the requirement of the equal protection clause, for the legislature could have concluded, not unreasonably, that the holding of such offices offers no significant threat to the integrity and efficiency of the civil service.

Affirmed.