PROFESSIONS AND OCCUPATIONS A medical doctor who is actively engaged in the practice of medicine and surgery in the state and who also serves as a part-time or associate faculty member, with or without remuneration, is not prohibited from serving as a member of the State Board of Medical Examiners. A medical doctor who serves as a full-time faculty member is prohibited, under 59 O.S. 482 [59-482] (1971), from serving as a member of the State Board of Medical Examiners. The Attorney General has considered your opinion request wherein you ask the following questions: "1. Whether or not a medical doctor in private practice in Oklahoma who assists as a part-time or associate faculty member, without pay, in teaching medical students in the University of Oklahoma medical schools would be prohibited from serving as a member of the State Board of Medical Examiners? "2. If such doctor, as outlined in question number 1, does receive pay for his part-time services, would he be prohibited from serving as a member of the State Board of Medical Examiners?" Your opinion request included the following facts: many of the medical doctors in Oklahoma are listed as part-time or associate faculty members of the University of Oklahoma Medical School and receive no remuneration; practicing physicians in Oklahoma City, Tulsa and nearby areas assist in the instruction of medical students as associate or assistant faculty members; doctors over the state who assist in training as preceptors are listed and considered as faculty members. In answering your questions it is necessary to refer to the statutory provision in question, 59 O.S. 482 [59-482] (1971) which states in pertinent part: "Immediately after the effective date of this act, the members of the State Board of Medical Examiners shall be appointed by the Governor from a list of not less than fourteen names submitted to the Governor by the Oklahoma State Medical Association, provided, that no member shall be a stockholder in or member of the faculty or board of trustees of any medical college or school . . . ." 59 O.S. 481 [59-481] sets forth the qualifications for members of the State Board of Medical Examiners to wit: "A State Board of Medical Examiners is hereby established in the State of Oklahoma to consist of seven members who shall be citizens of the United States of America, graduates in medicine from Medical Colleges recognized by Oklahoma at the time of such graduation, and legal and active practitioners of medicine and surgery within the State for more than three years prior to their appointment as members of said Board. . . ." From 1923 to 1943 the Governor was authorized to appoint members of the Board of Medical Examiners from the schools of practice commonly known as the Regular, the Eclectic, the Homeopathic, and the Physio-Medic Schools (Laws 1923, c. 59, p. 102, 1, Amended Laws 1943, p. 135, 4). The 1923 Act further stated that no school was to have a majority membership on the Board. The last provision of Section 2 of the 1923 Act stated: "Provided, further, that no member or alternate shall be a stockholder in or member of the faculty or board of trustees of any medical college or school." Thus, the Legislature prohibited stockholders, faculty members or members of the boards of trustees of those respective schools from serving as members of the board. Prior to the 1943 amendment, applicants admitted to the examination for license to practice medicine and surgery were examined in materia medica and practice by the member of the board representing the school of practice to which the applicant belonged. Title 59 O.S. 494 [59-494] (1941). It is apparent from reading the pre-1943 laws (59 O.S. 481 [59-481], 59 O.S. 482 [59-482] and 59 O.S. 494 [59-494]), that members of the Board of Medical Examiners had to be in the "legal and active practice of medicine and surgery" and not be affiliated with the several separate medical schools of practice as stockholders, members of the board of trustees or faculty members. Undoubtedly, said legislation was to prohibit any conflict of interest which might arise due to a member's association with the respective private medical school and his position on the licensing board. However, all reference to the different schools of practice were deleted in 1943 by amendment (Laws 1943, p. 135, 5). With the deletion of the statutory references to the separate schools of practice and the examination of applicants by members of the respective practice, the prohibition against faculty members serving on the Board of Medical Examiners must be reviewed. The Oklahoma University School of Medicine lists 455 full-time faculty members at the present time. There are 1700 physicians listed as professors, associate professors, visiting professors, instructors and preceptors. As of this date there are 3,369 persons licensed to practice medicine and surgery in the State of Oklahoma by the State Board of Medical Examiners. Thus, over fifty percent of all practicing medical doctors in the State of Oklahoma are associated with the Oklahoma University School of Medicine and are considered "faculty members". To hold that 59 O.S. 482 [59-482] is applicable to all medical doctors who are associated with the Oklahoma University School of Medicine would result in the majority of the medical doctors of this State being precluded from consideration or membership on the Board of Medical Examiners. Such result is clearly not within the legislative intent. Additionally, such result would not appear to be consistent with the equal protection requirements of the Fourteenth Amendment to the United States Constitution. In this regard, 16A C.J.S. Constitutional Law, 489 at page 242 through 244 reads as follows: "In order to be valid a statutory classification must reasonably promote some proper object of public welfare or interest, must rest on real and substantial differences, having a natural, reasonable, and substantial relation to the subject of the legislation, and must affect alike all persons or things within a particular class, or similarly situated; . . ." Further, 16A C.J.S. Constitutional Law, 489 at pages 246 and 247 (pocket part, pages 24 and 25) provides as follows: "Where classification infringes on the exercise of protected liberties or on fundamental or personal rights, a mere showing of rational relationship to some permissible objective is not enough; a compelling state or governmental interest must be shown, and the classification must be tested by necessity rather than by its rationality." In Ramero v. Hodgson, 319 F. Supp. 1201
(D.C. Cal.) aff'd 403 U.S. 901, 29 L.Ed.2d 678, it was held that a statutory classification, reasonable at the time of enactment, can become arbitrary with the passage of time. Concerning a person's right to be considered for service in a public office or on a public administrative board or commission, in Turner v. Fouche, 369 U.S. 346,24 L.Ed.2d 567 (1970), it was held that a person has a federal constitutional right to be considered for public service without the burden of discriminatory disqualification. In Zeilenga v. Nelson, 484 P.2d 578
(Cal. 1971), the California Supreme Court at page 580 of the opinion held as follows: " The right to hold public office, either by election or appointment, is one of the valuable rights of citizenship'. (Carter v. Commission on Qualifications of Judicial Appointments (1939), 14 Cal.2d 179,182, 93 P.2d 140, 142.) It is a 'fundamental right' (Ford v. Civil Service Commission (1964), 61 Cal.2d 331,335, 38 Cal.Rptr. 625, 392 P.2d 385) which theFirst Amendment protects against infringement (Johnson v. State Civil Service Department (1968), 280 Minn. 61,157 N.W.2d 747, 750; Minielly v. State, (1966), 242 Or. 490,411 P.2d 69, 73, 28 A.L.R.3d 704). There is 'a federal constitutional right to be considered for public service without the burden of invidious discriminatory disqualification.' (Turner v. Fouche (1970), 369 U.S. 346,362, 90 S.Ct. 532, 541, 24 L.Ed.2d 567). "To justify any impairment of First Amendment rights, there must be present a compelling governmental interest (Nuntley v. Public Utilities Com. (1968), 69 Cal.2d 67, 74,69 Cal.Rptr. 605, 442 P.2d 685.)" From a review of the cases and authorities cited above regarding this question, it is clear that a compelling governmental or state interest is one of necessity in the sense of it being necessary for the public welfare, safety or health. In view of this, there does not appear any compelling governmental or state interest served by the disqualification of all part-time medical school faculty members from the board along with the full-time faculty members, which would result in disqualifying more than one-half of all medical practitioners from being considered for public service on the board. In the instant situation, the statutory classification resulting in disqualification of medical school faculty members from serving on the Board cannot be constitutionally construed to apply to all faculty members carte blanche without regard to whether they are full-time or part-time. In addition, the exclusionary language in 59 O.S. 482 [59-482], "no member shall be a stockholder in or member of the faculty or board of trustees of any medical college or school", must be construed with the qualifications set forth in 59 O.S. 481 [59-481]. 59 O.S. 481 [59-481] shows the legislative intent that members of the Board of Medical Examiners be "legal and active practitioners in medicine and surgery." Thus, the Legislature clearly intended to prohibit full-time faculty members, who are not engaged in the active practice of medicine, from service on the Board of Medical Examiners. The primary object of statutory construction is to ascertain the legislative intent. Midwest City v. Harris, Okl.,561 P.2d 1357 (1977). As is stated in 67 C.J.S. Officers, 11, p. 24: "Subject to such limitations as may be imposed by the Constitution, the power to fix qualifications of those who shall hold offices may be exercised by the Legislature. The qualifications fixed may not be arbitrary, but must be reasonable and based on substantial grounds which are natural and inherent in the subject matter of the legislation. . . ." In construing the statute, all parts of the Act are to be considered together and a section should not be read in isolation from the content in which it appears. Groendyke Transport, Inc. v. Gardner, Okl.,353 P.2d 695 (1960). It is further reflected in State v. Oakes, Okl., 281 P.2d 749, 753 (1955), citing Board of County Commissioners of Creek County v. Alexander,58 Okl. 128, 159 P. 311: "It is the cardinal rule in the construction of the statutes that the intention of the Legislature, when ascertained, must govern, and that to ascertain the intent all the various provisions of legislative enactments upon the particular subject should be construed together and given effect as a whole. "When it is apparent that a strict interpretation of a particular statute, construed alone, would defeat the intention of the Legislature as shown by other legislative enactments, which relate to the same subject, and which have been enacted in pursuance of, and according to a general purpose in accomplishing a particular result such construction should not be adopted." In reviewing the legislative changes of 1923 and 1943, it is clear that the Legislature sought to prohibit full-time faculty members who were not engaged in the active practice of medicine from membership on the Board of Medical Examiners. It is equally clear that the Legislature never sought to prohibit the majority of legal and active practitioners of medicine and surgery from being qualified to serve on said Board although they nominally served as faculty members of the Oklahoma University School of Medicine. Further we do not presume that the Legislature would intend an unconstitutional result. In an Attorney General Opinion issued October 19, 1961 to S. F. Lester, Secretary of the State Board of Medical Examiners the questions now being presented were addressed. However, the opinion rendered was based upon a plain reading of the statute without review of the statutory changes in 1923 and 1943, or the requirements of the Equal Protection Clause. Said opinion is hereby overruled. Therefore, it is the opinion of the Attorney General that your questions be answered in the following manner: A medical doctor who is actively engaged in the practice of medicine and surgery in the State and who also serves as a part-time or associate faculty member, with or without remuneration, is not prohibited from serving as a member of the State Board of Medical Examiners. A medical doctor who serves as a full-time faculty member is prohibited, under 59 O.S. 482 [59-482] (1971), from serving as a member of the State Board of Medical Examiners. (KAY KAREN KENNEDY) (ksg)