In the Matter of the Contested Case
of HORNELL BREWING CO.,
INC., et al., Relators,

v.

MINNESOTA DEPARTMENT OF PUB-
LIC SAFETY, LIQUOR CONTROL
DIVISION, Respondent,

Office of Administrative Hearings,
Respondent.

No. CO–95–2710.

Court of Appeals of Minnesota.

Sept. 17, 1996.

Randall D.B. Tigue, Randall Tigue Law Office, P.A., Minneapolis, for Relator Hornell Brewing Co.

Kathleen Milner, Legal Counsel, Minnesota Civil Liberties Union, Minneapolis, for Relator Hornell Brewing Co.

Hubert H. Humphrey, III, Attorney General, Jeffrey F. Lebowski, Assistant Attorney General, St. Paul, for Respondent Minnesota Department of Public Safety.

Robert P.W. Gough, Rosebud, SD, for Intervenor Estate of Tasunke Witko.

Kenneth E. Tilsen, Hamline University School of Law, St. Paul, for Intervenor Estate of Tasunke Witko.

Considered and decided by AMUNDSON, P.J., and NORTON and PETERSON, JJ.

## OPINION

PETERSON, Judge.

This appeal is from an order of the Commissioner of Public Safety revoking the brand label registration of a malt liquor product. We reverse.

## FACTS

In early 1992, relator Hornell Brewing Co., Inc., (Hornell) planned to begin selling in Minnesota a malt liquor product called "The Original Crazy Horse Malt Liquor." In March 1992, G. Heileman Brewing Company, Inc., acting on behalf of Hornell, applied to respondent Liquor Control Division of the Minnesota Department of Public Safety to register the brand label for "The Original Crazy Horse Malt Liquor." The proposed label was approved.

On the approved label, the words "The Original Crazy Horse Malt Liquor" surround an image of an American Indian wearing a feather bonnet. The words, "Dakota Hills, Ltd." are prominently displayed beneath the product name. The reverse side of the label contains the following text:

The Black Hills of Dakota, steeped in the history of the American West, home of Proud Indian Nations. A land where imagination conjures up images of blue clad Pony Soldiers and magnificent Native American Warriors. * * * A land where wailful winds whisper of Sitting Bull, Crazy Horse and Custer. A land of character, of bravery, of tradition. A land that truly speaks of the spirit that is America.

In 1993, the Rosebud Sioux Tribal Court appointed intervenor Seth H. Big Crow, Sr., administrator of the estate of Ta–Sunke Witko, a.k.a. Crazy Horse. In an affidavit, intervenor stated that the name "Crazy Horse" is an approximate English translation of the Lakota name "Tasunke Witko," which was the name of a specific individual, now deceased, who was recognized as one of the foremost Lakota spiritual and political leaders of all time. Intervenor further stated that G. Heileman Brewing Company and its subsidiaries or associates have taken the name of Crazy Horse without the consent of

the lawful holders of the right to the name and that

the Family and the Estate denies and disavows any association, endorsement, sponsorship or affiliation with the Heileman and Hornell product bearing the name "Crazy Horse", and that any use of the name "Crazy Horse", with direct reference to the historic Lakota warrior and spiritual leader, particularly in association with the sale of alcoholic beverages, as occurs in this case, is unconsented, unpermitted, offensive, false, misleading and in violation of the lawful rights of the family and heirs of Tasunke Witko.

In 1994, the Minnesota legislature enacted a statute that requires the commissioner of the Department of Public Safety to revoke the registration of a malt liquor brand label if the registered label states or implies in a false or misleading manner a connection with an American Indian leader. The new statute, Minn.Stat. § 340A.311(d) (1994), became effective on August 1, 1994. 1994 Minn. Laws ch. 611, §§ 12, 35; Minn.Stat. § 645.02 (1994).

The Director of the Liquor Control Division of the Department of Public Safety determined that all of the elements of the new statute were met by the brand label registration for "The Original Crazy Horse Malt Liquor" and notified Heileman that the registration was revoked effective August 1, 1994, unless Heileman requested a contested case hearing. Heileman requested a hearing. Following the hearing, the Commissioner revoked the brand label registration.

## ISSUE

Does Minn.Stat. § 340A.311(d) (1994) violate relator's right to freedom of speech and expression as guaranteed by the First Amendment to the United States Constitution?

## ANALYSIS

Minn.Stat. § 340A.311(d) (1994) provides:

The commissioner [of public safety] shall refuse to register a malt liquor brand label, and shall revoke the registration of a malt liquor brand label already registered,

if the brand label states or implies in a false or misleading manner a connection with an actual living or dead American Indian leader. This paragraph does not apply to a brand label registered for the first time in Minnesota before January 1, 1992.

■ Generally, statutes "enjoy a presumption of constitutionality which remains in force until the contrary is established beyond a reasonable doubt." *State v. Casino Mktg. Group, Inc.*, 491 N.W.2d 882, 885 (Minn.1992), *cert. denied*, 507 U.S. 1006, 113 S.Ct. 1648, 123 L.Ed.2d 269 (1993). However,

> "any provision of law restricting [first amendment] rights does not bear the usual presumption of constitutionality normally accorded to legislative enactments."

*Id.* (alteration in original) (quoting *Johnson v. State Civil Serv. Dep't*, 280 Minn. 61, 66, 157 N.W.2d 747, 751 (1968)). This principle applies even when the speech affected is commercial speech,

> for a strong presumption in favor of the constitutionality of a statute governing commercial speech would run an unacceptable risk of chilling protected speech.

*Id.* Thus, when a statute restricts commercial speech, "the state bears the burden of establishing the statute's constitutionality." *Id.* at 886.

Respondent does not dispute that the product label is a form of commercial speech, or that Minn.Stat. § 340A.311(d) restricts commercial speech. Respondent contends that, under the test established in *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), Minn.Stat. § 340A.311(d) is a valid regulation of false and misleading commercial speech.

In *Central Hudson*, the United States Supreme Court set forth the following four-part analysis to be used when determining whether a restriction on commercial speech is permitted under the First Amendment:

> For commercial speech to come within [the First Amendment], it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted govern-

mental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Central Hudson*, 447 U.S. at 566, 100 S.Ct. at 2351.

Respondent contends that, by its plain language, Minn.Stat. § 340A.311(d) applies only to false or misleading commercial speech, which, under the *Central Hudson* analysis, is not entitled to First Amendment protection. Therefore, respondent concludes, the statute does not violate the First Amendment.

■ It is true that

> there can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity,

*Central Hudson*, 447 U.S. at 563, 100 S.Ct. at 2350. But our analysis does not end simply because Minn.Stat. § 340A.311(d) regulates only false or misleading commercial speech. The statute does not prohibit commercial speech that is just false or misleading; the statute prohibits commercial speech that is false or misleading and also "states or implies * * * a connection with an actual living or dead American Indian leader." Minn. Stat. § 340A.311(d). If a malt liquor label does not state or imply a connection with an American Indian leader, the label is not prohibited by the statute even if the label is false or misleading. Relator argues that because Minn.Stat. § 340A.311(d) prohibits only a false or misleading label that states or implies a connection with an American Indian leader, it is impermissibly content-based.

> The First Amendment generally prevents government from proscribing speech, or even expressive conduct, because of disapproval of the ideas expressed. Content-based regulations are presumptively invalid.

*R.A.V. v. City of St. Paul*, 505, U.S. 377, 382, 112 S.Ct. 2538, 2542, 120 L.Ed.2d 305 (1992) (citations omitted).

■ There are some exceptions to this general rule; restrictions on the content of

speech have been permitted with regard to obscenity, defamation, and fighting words. *Id.* at 382–83, 112 S.Ct. at 2542–43. The Court has "sometimes said that these categories of expression are not within the area of constitutionally protected speech." *Id. at 383, 112 S.Ct. at 2543.* But this means only

> that these areas of speech can, consistently with the First Amendment, be regulated *because of their constitutionally proscribable content* (obscenity, defamation, etc.)—not that they are categories of speech entirely invisible to the Constitution, so that they may be made the vehicles for content discrimination unrelated to their distinctively proscribable content. Thus, the government may proscribe libel; but it may not make the further content discrimination of proscribing *only* libel critical of the government.

*Id.* at 383–84, 112 S.Ct. at 2543.

In *R.A.V.*, the United States Supreme Court considered whether a city ordinance was impermissibly content-based and therefore facially invalid under the First Amendment. The ordinance provided:

> Whoever places on public or private property a symbol, object, appellation, characterization or graffiti, including, but not limited to, a burning cross or Nazi swastika, which one knows or has reasonable grounds to know arouses anger, alarm or resentment in others on the basis of race, color, creed, religion or gender commits disorderly conduct and shall be guilty of a misdemeanor.

*Id.* at 380, 112 S.Ct. at 2541. The *R.A.V.* Court accepted the Minnesota Supreme Court's statement that the ordinance applies only to expressions that constitute "fighting words," and assumed, "arguendo, that all of the expression reached by the ordinance is proscribable under the 'fighting words' doctrine." *Id.* at 381, 112 S.Ct. at 2542. Nevertheless, the Court concluded the ordinance was facially unconstitutional because it applied only to "specified disfavored topics" and because it went "beyond mere content discrimination, to actual viewpoint discrimination." *Id.* at 391, 112 S.Ct. at 2547.

■ Just as respondent contends is the case with Minn.Stat. § 340A.311(d), the ordi-

nance in *R.A.V.* restricted only speech that is within one of a few categories of speech that can be regulated because of their constitutionally proscribable content; the statute restricts only false or misleading commercial speech and the ordinance restricted only fighting words. As in *R.A.V.*, however, the fact that the speech regulated by the statute is false or misleading does not mean that the speech is entirely invisible to the constitution.

> [J]ust as the power to proscribe particular speech on the basis of a noncontent element (e.g., noise) does not entail the power to proscribe the same speech on the basis of a content element; so also, the power to proscribe it on the basis of *one* content element (e.g., obscenity) does not entail the power to proscribe it on the basis of *other* content elements.

*R.A.V.*, 505 U.S. at 386, 112 S.Ct. at 2544. The First Amendment imposes "a 'content discrimination' limitation upon a State's prohibition of proscribable speech." *Id.* at 387, 112 S.Ct. at 2545. Thus, speech that may be regulated because it is false or misleading may not be regulated on another basis that is unrelated to its distinctively proscribable content.

■ The prohibition against content discrimination is not, however, absolute. *Id.,* at 387, 112 S.Ct. at 2545. One exception acknowledged by the *R.A.V.* court applies

> [w]hen the basis for the content discrimination consists entirely of the very reason the entire class of speech at issue is proscribable.

*Id.* at 388, 112 S.Ct. at 2545.

> For example,
> the Federal Government can criminalize only those threats of violence that are directed against the President, since the reasons why threats of violence are outside the First Amendment (protecting individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur) have special force when applied to the person of the President. But the Federal Government may not criminalize only those threats against the President

that mention his policy on aid to inner cities. And * * * a State may choose to regulate price advertising in one industry but not in others, because the risk of fraud (one of the characteristics of commercial speech that justifies depriving it of full First Amendment protection) is in its view greater there. But a State may not prohibit only that commercial advertising that depicts men in a demeaning fashion.

*Id.* at 388–89, 112 S.Ct. at 2546 (citations omitted).

■ Respondent and intervenor argue that Minn.Stat. § 340A.311(d) is permitted under this exception recognized by the *R.A.V.* court. We conclude that the exception is not applicable because the basis for content discrimination in Minn.Stat. § 340A.311(d) does not consist entirely of the very reason that false or misleading commercial speech is proscribable.

The distinction between a government prohibition of threats of violence that are directed against the president and a government prohibition of threats against the president that mention the president's policy on aid to inner cities is that the latter prohibition applies only when the threat contains a certain message, while the former applies regardless of the message delivered by the threat. The government may impose the former prohibition because, in doing so, it does not sanction one message and prohibit another. In contrast, the latter prohibition may not be imposed because it applies only when a threat contains a certain message and, therefore, "raises the specter that the Government may effectively drive certain ideas or viewpoints from the marketplace." *R.A.V.*, 505 U.S. at 387, 112 S.Ct. at 2545 (quoting *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 116, 112 S.Ct. 501, 508, 116 L.Ed.2d 476 (1991)). For the same reason, a state may decide to regulate price advertising in one industry but not another so long as the regulation applies without regard to the message contained in any particular advertisement.

■ Unlike the examples of permitted content discrimination described by the court in *R.A.V.*, Minn.Stat. § 340A.311(d) proscribes speech on the basis of two content elements, not just one. Whether any particular label is prohibited by the statute can only be determined by examining the content of the label to determine both whether it is false or misleading and whether it states or implies a connection with an American Indian leader. The basis for the content discrimination in the statute goes beyond whether the speech is false or misleading.

■ Even though speech prohibited by a state is within a category of speech that may be totally proscribed, content discrimination within that category of speech is permitted only if

the nature of the content discrimination is such that there is no realistic possibility that official suppression of ideas is afoot.

*R.A.V.*, 505 U.S. at 390, 112 S.Ct. at 2547.

Respondent asserts that

[t]he State has a valid and substantial interest in prohibiting the false and misleading nature of the unauthorized or unsupported appropriation of individuals' names in connection with commercial goods and services.

Respondent argues that Minn.Stat. § 340A.311(d) validly serves to protect this state interest. But, even if this is a compelling state interest,

the "danger of censorship" presented by a facially content-based statute requires that that weapon be employed only where it is *"necessary* to serve the asserted [compelling] interest."

*R.A.V.*, 505 U.S. at 395, 112 S.Ct. at 2549 (alteration in original) (citations omitted).

Respondent has not explained why a statute that prohibits only false or misleading labels that state or imply a connection with an American Indian leader is necessary to serve the state's asserted interest in prohibiting the false, misleading, unauthorized, or unsupported appropriation of individuals' names. Absent any rationale for acting to protect this interest only when the name appropriated is within a narrowly described category, we cannot conclude that there is no realistic possibility that official suppression of ideas is afoot.

## DECISION

Because the state has not explained why prohibiting only false or misleading commercial speech that states or implies a connection with an American Indian leader is necessary to serve its asserted interest in prohibiting the false, misleading, unauthorized, or unsupported appropriation of individuals' names, Minn.Stat. § 340A.311(d) is impermissibly content-based, and, therefore, facially invalid under the first amendment to the United States constitution.

**Reversed.**