# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 93-CC-01036-SCT

*DON BULLOCK*

*v.*

*MISSISSIPPI EMPLOYMENT SECURITY COMMISSION*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/02/93 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GUY M. WALKER II |
| ATTORNEY FOR APPELLEE: | FRED LOTTERHOS |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES (OTHER THAN WORKER'S COMPENSATION) |
| DISPOSITION: | AFFIRMED - 5/8/97 |

## CONSOLIDATED WITH

## 94-CC-00840-SCT

*DON BULLOCK*

*v.*

*CITY OF LAUREL, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 8/11/94 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GUY M. WALKER |
| ATTORNEY FOR APPELLEE: | WILLIAM S. MULLINS |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES (OTHER THAN WORKER'S COMPENSATION) |
| DISPOSITION: | AFFIRMED - 5/8/97 |
| MOTION FOR REHEARING FILED: | 5/21/97 |
| MANDATE ISSUED: | 7/24/97 |

**BEFORE PRATHER, P.J., ROBERTS AND MILLS, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

**¶1.** Don Bullock was an administrative employee with the City of Laurel when he qualified to run for the office of mayor of the City against the incumbent, Henry Bucklew. Bucklew gave Bullock written notice that his employment with the City was being terminated as of February 18, 1993, due to his having qualified as a candidate for municipal elective office at a time when he was a civil service employee of the City. Bucklew cited Miss. Code Ann. § 21-31-27 and § 21-31-75 (1972) as authority for the termination. Bullock's termination was affirmed by both the Civil Service Commission and the Jones County Circuit Court.

¶2. Bullock applied for unemployment compensation and was denied benefits, based on a finding that Bullock's termination was due to misconduct. The denial of unemployment benefits was upheld by Mississippi Employment Security Commission's appeals referees, the Commission's Board of Review, and the Jones County Circuit Court.

¶3. Bullock now appeals both the termination decision and the denial of unemployment benefits to this Court.

## DISCUSSION

**I.[1] WHETHER SECTIONS 21-31-27 AND 21-31-75 OF THE MISSISSIPPI CODE ANNOTATED PROHIBITS AN ADMINISTRATIVE EMPLOYEE UNDER CIVIL SERVICE FROM QUALIFYING TO RUN AS MAYOR OF THE MUNICIPALITY.**

**II. WHETHER SECTION 21-31-75 IS THE ONLY STATUTE APPLICABLE GOVERNING CIVIL SERVICE EMPLOYEES WHO ARE ADMINISTRATIVE OR SALARIED AS DISTINGUISHED FROM POLICEMEN AND FIREMEN AND WHETHER THE ONLY PROHIBITION IS AGAINST AN ADMINISTRATIVE EMPLOYEE ACTING AS A REPRESENTATIVE OF ANY CANDIDATE.**

**¶4.** In his letter to Bullock terminating his employment with the City, Mayor Bucklew wrote in part:

This action is taken due to the fact that while employed as a Civil Service employee of the City of Laurel, you qualified as a candidate for office in the 1993 Municipal Election, and in accordance with Sections 21-31-27 and 21-31-75, Mississippi Code of 1972.

¶5. Miss. Code Ann. § 21-31-27 and § 21-31-75 read in pertinent part:

§ 21-31-27: If any person holding any office, place, position or employment subject to civil service, actively participates in political activity in any primary or election in a municipality where he is employed, it shall be deemed cause for removal.

§ 21-31-75: No person holding any office, place, position or employment subject to civil service, is under any obligation to contribute to any political fund or to render any political service to any person or party whatsoever, and no person shall be removed, reduced in grade or salary, or otherwise prejudiced for refusing so to do. No public officer, whether elected or appointed, shall discharge, promote, demote or in any manner change the official rank,

employment or compensation of any person under civil service, or promise or threaten so to do, for giving or withholding, or neglecting to make any contribution of money, or service, or any other valuable thing, for any political purpose. *No such employee shall engage in any political campaign as a representative of any candidate or shall engage in pernicious activities, and any person so engaging in such activities shall be subject to dismissal or demotion.*

(emphasis added).

¶6. Bullock's argument is two-fold. First, he maintains that only § 21-31-75 and not § 21-31-27 applies to him as an administrative employee. Second, he contends that § 21-31-75 only prohibits a civil service employee from representing a candidate in a political campaign, not from actually being a candidate himself.

¶7. The Mississippi legislature has established two separate civil service systems in the state. The first, established by Miss. Code Ann. §§ 21-31-1 through 21-31-27, applies only to "full paid employees of the fire and police departments . . . ." **See** *City of Laurel v. Samuels,* 469 So. 2d 530, 531 (Miss. 1985). The second civil service system was created by Miss. Code Ann. §§ 21-31-51 through 21-31-75, and is applicable to administrative and other municipal employees on a monthly salary. *Id.* at 531.  Bullock was a civil service administrative employee of the City of Laurel and therefore subject to the civil service laws found at §§ 21-31-51 through 21-31-75. Miss. Code Ann. § 21-31-27 is not, then, applicable to him as an administrative employee.

¶8. The question remains whether Miss. Code Ann. § 21-31-75 prohibited Bullock from qualifying as a candidate in a municipal election while employed as an administrative employee subject to the civil service statutes. Bullock contends that it did not, and had the legislature intended that civil servants not run for office, it would have added the phrase "or be a candidate" to the statute. Bullock argues that a reading of § 21-31-75 shows that the intent of the legislature was to protect a civil servant from political pressure from his superiors and others that might otherwise arise due to his employment in the municipality. Bullock suggests that the purpose of the last sentence of the section, which prevents the employee from engaging in a political campaign "as a representative of any candidate", is to protect the civil service employee so it would not be claimed that he voluntarily worked for a candidate in a political election.

¶9. The City of Laurel and the Mississippi Employment Security Commission both argue that § 21-31-75 prohibited Bullock from becoming a political candidate. They maintain that Bullock's argument that in qualifying as a candidate for mayor he did not "engage in any political campaign as a representative of any candidate" is ridiculous. They urge this Court to hold that it was the legislature's intent when they used the phrase "representative of any candidate" that it necessarily encompass being a candidate since one would then be representing oneself.

¶10. Long standing precedent requires that where a statute is plain and unambiguous there is no room for construction. It is only when a statute is unclear or ambiguous that a court should look beyond that language of the statute in determining the legislature's intent. *Kerr-McGee Chem. Corp. v. Buelow,* 670 So. 2d 12, 17 (Miss. 1996); *Allred v. Webb,* 641 So. 2d 1218, 1222 (Miss. 1994); *Clark v. State ex rel. Mississippi State Medical Ass'n,* 381 So. 2d 1046 (Miss. 1980). Looking once again to the portion of § 21-31-75 at conflict here, when read together with the rest of the statue, the meaning seems clear and unambiguous:

No person holding any office, place, position or employment subject to civil service, is under any obligation to contribute to any political fund or to render any political service to any person or party whatsoever, and no person shall be removed, reduced in grade or salary, or otherwise prejudiced for refusing so to do. No public officer, whether elected or appointed, shall discharge, promote, demote or in any manner change the official rank, employment or compensation of any person under civil service, or promise or threaten so to do, for giving or withholding, or neglecting to make any contribution of money, or service, or any other valuable thing, for any political purpose. *No such employee shall engage in any political campaign as a representative of any candidate* or shall engage in pernicious activities, and any person so engaging in such activities shall be subject to dismissal or demotion.

(emphasis added).

¶11. This Court holds that the legislature's intent throughout the statute is to protect civil service employees, who by the very nature of their employment are subordinates to elected officials, from being pressured to contribute in any way to any political campaign. This is clearly the intent of the first two sentences of the statute. The phrase "no such employee shall engage in any political campaign as a representative of any candidate" is merely an extension of this intent. Disallowing persons coming under the civil service statutes from representing a candidate in a political campaign, even on a voluntary basis, lessens the possibility of hidden pressures to do so, since there can be no defense that the person voluntarily represented a candidate.

¶12. The language of the statute does not explicitly prohibit a person from being a candidate him or herself. The City of Laurel and the Mississippi Employment Security Commission argue that such a prohibition is implied. This Court agrees that a reasonable interpretation of legislative intent would prohibit an employee from running for an office, as well as representing a political candidate. If the purpose of the statute is to prevent employees from being pressured politically against the employee's wishes, this Court extends the legislature's use of the phrase "represent a candidate" to necessarily preclude a civil servant from becoming a candidate as he would then be representing himself. There is no need for an explicit prohibition where a reasonable interpretation can be made from the plain reading of the statute.

¶13. Had Miss. Code Ann. § 21-31-27 been applicable to Bullock as an administrative employee, there is the possibility that his qualifying as a candidate in a municipal election would have been cause for removal. But, Miss. Code Ann. § 21-31-27 did not apply to Bullock because he was an administrative employee not employed by the fire or police department. In this case, Miss. Code Ann. § 21-31-75 was the applicable statute and authorized Mayor Bucklew to fire Bullock because he qualified to run for mayor. Therefore, he was properly dismissed, and the denial of unemployment benefits was justified. This cause is affirmed on this issue in favor of both the City and the Commission and against Bullock.

**III. WHETHER SECTION 21-31-75 IS UNCONSTITUTIONAL IN THAT IT VIOLATES ARTICLE 3 OF SECTION 4 OF THE MISSISSIPPI CONSTITUTION, THE FIRST AMENDMENT, THE FIFTH AMENDMENT, THE FOURTEENTH AMENDMENT, SECTION 2, AND THE FIFTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, FOR THE REASON THAT THE SAME IS TOO**

**EXCESSIVE AN EXERCISE OF POWER, NOT REASONABLY RELATED TO A GOVERNMENTAL PURPOSE AND GOES BEYOND THE NECESSITY OF THE CASE SO AS TO BE AN ARBITRARY EXERCISE OF GOVERNMENT POWER.**

¶14. Next, Bullock argues that Miss. Code Ann. § 21-31-75 is unconstitutional as being over broad since it is not limited to representation of a municipal candidate, but instead encompasses candidates in any election, city, county, state, or federal. The hypothetical used by Bullock in his argument that § 21-31-75 would prevent a secretary, who is an administrative employee within a municipality, from representing a county candidate, a state candidate, a federal candidate, or the President of the United States. Bullock argues that when taken in this context, the statute is too excessive an exercise of power and should be declared unconstitutional.

¶15. This Court holds that Bullock does not have standing to raise this issue since he does not argue that it is unconstitutional when applied to his situation, only that it might be unconstitutional in other circumstances not involving a municipal election. "[A] person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in situations not before the Court." *Broadrick v. Oklahoma,* 413 U.S. 601, 610 (1973). **See also,** *Mississippi Bd. of Nursing v. Belk,* 481 So. 2d 826, 831 (Miss. 1985); *State of New Mexico v. Manzagol,* 87 N.M. 230, 233, 531 P.2d 1203, 1206 (1975). Therefore, this issue is not properly before the Court and should not be addressed.

### IV. WHETHER SECTIONS 21-31-27 AND 21-31-75 ARE UNENFORCEABLE SINCE THEY HAVE NOT BEEN APPROVED BY THE JUSTICE DEPARTMENT AS REQUIRED BY SECTION 5 OF THE VOTING RIGHTS ACT OF 1965, 42 USC 1973c,

¶16. Bullock argues that Miss. Code Ann. § 21-31-27 and § 21-31-75 are unenforceable since they were not precleared by the Justice Department pursuant to section 5 of the Voting Rights Act of 1965, as amended, 42 USC § 1973c. Section 5 of the Voting Rights Act requires preclearance before the enforcement of any rules effecting the voting rights of citizens. According to Bullock, § 21-31-27 and § 21-31-75 place an obstacle to candidates qualifying for elective office, and there is the potential for discrimination, placing a burden upon entry into an elective campaign and limiting the choices available to voters.

¶17. The preclearance requirement of the Voting Rights Act is not applicable to § 21-31-27 and § 21-31-75 of Mississippi's Civil Service Act. The preclearance provisions of 42 USC 1973c are not to be applied retroactively. *Mexican Am. Bar Assoc. of Texas v. State of Texas,* 755 F.Supp. 735, 737 (W.D. Tex. 1990), *Hereford Indep. Sch. Dist. v. Bell,* 454 F.Supp. 143 (D.C. Tex. 1978), *Briscoe v. Bell,* 432 U.S. 404, 413 n. 12 (1977). As the provisions of state law at issue here were enacted in 1944 and the Voting Rights Act was not enacted until 1965, it has no application in this instance. This issue is therefore without merit.

### CONCLUSION

¶18. Bullock's employment with the City of Laurel was properly terminated when he qualified as a candidate for mayor against incumbent Bucklew. Miss. Code Ann. § 21-31-27 did not apply to him; however, Miss. Code Ann. § 21-31-75 did apply. This Court, interpreting that statute, holds that Bullock was prohibited from representing a political candidate, as well as being a political candidate

himself. For these reasons, this Court affirms the decision of the trial court below.

¶19. **JUDGMENT IS AFFIRMED**.

**PRATHER, P.J., PITTMAN, SMITH AND MILLS, JJ., CONCUR. LEE, C.J., CONCURS IN RESULT ONLY. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND McRAE, J. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND BANKS, J.**

   **BANKS, JUSTICE, DISSENTING:**

¶20. I must dissent from the majority opinion because I disagree with its interpretation of the pertinent statute, as well as its conclusions. In sum, I do not agree that the statute should be interpreted to prohibit Bullock from being a candidate and, even if is so interpreted, I do not believe that his discharge was "for good cause" within the means of our employment security law.

¶21. While I agree with the majority that Bullock was subject to the civil service provisions codified at Miss. Code Ann. §§ 21-31-51, -75, I cannot concur in its interpretation that those laws prohibited Bullock from qualifying as a candidate in the mayoral election. The majority notes the principle that a plain and unambiguous statute ought not to be further constructed by this Court. It further "holds" that the legislative intent behind the prohibition of civil servants' engagement in political campaign activity as a representative of a candidate is to protect civil servants from being pressured into contributing to a particular official's campaign. In my view, both premises militate against the majority's conclusion that Bullock was prohibited under this statute from himself running for office.

¶22. First, the plain and unambiguous language states that civil servants such as Bullock may not "engage in any political campaign as a representative of any candidate." This Section says nothing about engaging in any political campaign *as* a candidate. To state what is obvious to my mind, one is not a "representative" of oneself.[2] Therefore, the plain and unambiguous language in the statute did not prohibit Bullock's activity. The majority has not offered any justification for its expansive interpretation of an admittedly plain and unambiguous statute.

¶23. Second, the legislative intent that has been identified by the majority opinion provides further support for a literal reading of the statute. If the prohibition is intended to remove all external pressures on civil servants to provide political support to their employers, then there was no reason for the legislature to include within the statute's ambit any prohibition on one's qualification of himself for election to political office. A civil servant who wishes to run for political office would not be doing so as a result of the kind of political pressure from his employer that prompted this legislation. Thus, the legislative intent of the statute, in addition to its plain language, seems to me to permit Bullock to qualify himself to run for office.

¶24. While, as I have noted, the statute seems to me to plainly on its face to allow Bullock's activity, I wish to further note that it is especially important for this Court to refrain from any expansive construction of statutes that purport to limit citizens' ability to assert their constitutional rights, such as Bullock's freedom to engage in political speech and activity. *Cf. Buckley v. Valeo*, 424 U.S. 1, 45, 96 S.Ct. 612, 647, 46 L.Ed.2d 659 (1976) (limitations of political expressions are subject to most exacting scrutiny); *Thornhill v. Alabama*, 310 U.S. 88, 95, 60 S.Ct. 736, 740, 84 L.Ed 1093 (1940)

(freedom of speech is a fundamental right and liberty).

¶25. In any event, even if I could concur with the majority's conclusion that the statute at issue here prohibited Bullock from running for mayor, I could not further conclude that his doing so was grounds for denial of unemployment benefits. As I have noted above and the majority concedes, the plain language of this statute does not in any way indicate that Bullock's behavior was prohibited and therefore grounds for his dismissal. Needless to say, nor has this Court previously construed the statute as it does today. Since he had no way of knowing that his conduct was grounds for discharge, I would not now bar him from obtaining unemployment compensation on the grounds that he was discharged for "cause." Since the statute was, at best, extremely ambiguous, Bullock's conduct in qualifying for the mayoral election cannot fairly be considered a willful and wanton disregard of his employer's interest, nor a carelessness or negligence of such degree as to show an intentional or substantial disregard of his duties as to be misconduct as would bar his right to unemployment compensation. *Wheeler v. Arriola*, 408 So. 2d 1381, 1383 (Miss. 1982) (enunciating standard of misconduct that will preclude an award of benefits).[(3)]

¶26. Finally, I would like to address the majority's conclusion that Bullock does not have standing to raise an overbreadth challenge to this statute's restraints on people's First Amendment rights. Without question, a litigant does not ordinarily have standing to challenge the constitutionality of the breadth of a statute when its application to his conduct is nevertheless constitutional. This requirement that litigants themselves be "injured" by a statute's defects, however, has been historically relaxed in the context of overbreadth challenges to statutes that restrict First Amendment freedoms. *Broadrick v. Oklahoma*, 413 U.S. 601, 612-15, 93 S.Ct. 2908, 37 L.Ed. 2d 830 (1973). It has long been recognized that litigants may raise overbreadth challenges in the area of the First Amendment even though their own conduct may have been constitutionally restrained where the statute in question reaches substantially beyond regulable speech. The rationale of allowing such facial challenges inheres in the uniquely oppressive nature of overly broad restraints on speech, the freedom of which is at the core of our fundamental rights. *Dombrowski v. Pfister*, 380 U.S. 479, 486-7, 85 S.Ct. 1116, 14 L.Ed. 2d 22 (1965) (the First Amendment freedoms occupy an especially revered and protected place in our scheme of fundamental rights). An overly broad statute that restrains citizens' freedom of speech will work a substantial chilling effect on constitutionally protected speech, such that there may *never* be a litigant who has traditional standing inasmuch as he has engaged in the unconstitutionally prohibited expression. Thus, the rule which relaxes standing requirements serves to combat this chilling effect on constitutionally valuable expression. *See generally*, Richard H. Fallon, Jr., "Making Sense of Overbreadth," 100 Yale L.J. 853 (1991); Note, "The First Amendment Overbreadth Doctrine," 83 Harvard L.Rev. 844 (1970).

¶27. That said, I would hold that Bullock does have standing to raise an overbreadth challenge to this statute. I would nevertheless conclude that the statute, as written, does not work any unconstitutional restraint on municipal employees' freedom of political expression. *Broadrick v. Oklahoma*, 413 U.S. 601, 617, 93 S.Ct. 2908, 37 L.Ed. 2d 830 (1973) (rejecting overbreadth challenge to state statute which prohibited state employees from participating in any political campaign or organization as a representative or a candidate).

¶28. To reiterate, I feel compelled to dissent from the majority opinion because I cannot agree with its interpretation of the statute to prohibit Bullock from running for office, and I cannot agree that

Bullock was rightfully denied unemployment benefits.

**SULLIVAN, P.J., AND McRAE, J., JOIN THIS OPINION.**

**McRAE, JUSTICE, DISSENTING:**

¶29. I agree with the majority's conclusion that, as a civil service administrative employee, Don Bullock was subject only to the civil service laws found at Miss. Code Ann. §§ 21-31-51 through 21-31-75. However, I must part with the majority's reading of § 21-31-75, because it does not preclude a civil service employee from becoming a political candidate.

¶30. Nowhere does § 21-31-75 require that a civil service employee cannot run for an elected office. The statute, plainly and unambiguously, says that no employee can engage in a political campaign as a representative of any candidate. The majority even declares that the language does not explicitly prohibit a person from being a candidate. However, the majority's interpretation of the statute stretches the plain meaning of its terms to new lengths.

¶31. The purpose of the statute is, as the majority holds, "to protect civil service employees. . .from being pressured to contribute in any way to any political campaign." If a civil servant decides to run for office, how could that employee, who represents himself, be pressured politically against his wishes?

¶32. Consider the scenario of a sheriff or mayor who decides not to run for reelection. If the majority's argument is accepted, then any deputy or city employee who sought the sheriff's position would have to resign from his or her job, just to run for the office. The deputies or city employees, who are paid a monthly salary, would have to abandon a job to spend four or five months to seek another one that they are not guaranteed of receiving. Surely, this was not the outcome that the legislature intended when it enacted § 21-31-75. Accordingly, I dissent.

**SULLIVAN, P.J., AND BANKS, J., JOIN THIS OPINION.**

1. Issues I and II are essentially the same issues reworded. Bullock argues them together in his brief, and so, they will be discussed together here.

2. *Webster's New International Dictionary, 2d ed.*: representative: "One who or that which represents; specif.: **a** A person or thing that represents, or stands for, a number or class of persons or things, or that in some way *corresponds to, stands for, replaces, or is equivalent to, another person or thing*; a typical embodiment, type. **b** *One who represents others or another in a special capacity*; an agent, deputy, or substitute . . . . " (emphasis added).

3. Moreover, to the extent that Bullock's grounds for discharge arose in his assertion of a constitutional right, this Court has held that such behavior will not give rise to "misconduct"

sufficient to preclude unemployment benefits even though he may have been lawfully discharged. *See MESC v. McGlothin*, 556 So. 2d 324 (Miss. 1990) (State may not deny unemployment benefits to an individual who was discharged for declining to abandon her observation of sincerely held religious beliefs as evidenced in her attire, even though she may have been lawfully discharged for failing to observe the employer's dress code).