# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-EC-01746-SCT

*JIMMY CALLAHAN*

*v.*

*LEAKE COUNTY DEMOCRATIC EXECUTIVE COMMITTEE AND GREG WAGGONER*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/07/1999 |
| TRIAL JUDGE: | HON. JOHN T. KITCHENS |
| COURT FROM WHICH APPEALED: | LEAKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BRIAN AUSTIN HINTON |
| ATTORNEYS FOR APPELLEES: | ROBERT M. LOGAN, JR. |
| | J. NILES McNEEL |
| NATURE OF THE CASE: | CIVIL - ELECTION CONTEST |
| DISPOSITION: | AFFIRMED - 12/7/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/28/2000 |

**EN BANC.**

**BANKS, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Here we confront the question of whether the prohibition against political activity which applies to officers and employees of the Mississippi Department of Wildlife, Fisheries and Parks disqualifies them as candidates for public office. We hold that while the prohibition is a condition of employment, it is not a disqualification for seeking or holding office.

## I.

¶2. On March 1, 1999, Greg Waggoner, an employee of twenty-three years with the Mississippi Department of Wildlife, Fisheries, and Parks, qualified to run for the elective office of Leake County Sheriff. Jimmy Callahan, the incumbent Sheriff of Leake County, had qualified to run for reelection on February 12, 1999. Aware of a statute prohibiting employees of the Department from being active in a political campaign for their own candidacy or the candidacy of another, Waggoner took a leave of absence from his employment on March 7, 1999. Waggoner officially retired from the Department on July 31, 1999-before the first primary election.

¶3. Callahan and Waggoner were the only candidates in the Democratic Party primary election for that party's nomination for the office of Sheriff. Waggoner received 3,241 votes, and Callahan received 3,166 votes. The certification of these election results was tantamount to the election of Waggoner as Sheriff, because there were no other party nominees for the office and no independents qualified.

¶4. On August 26, 1999, Callahan filed a petition with the Leake County Democratic Executive Committee, alleging irregularities in a precinct. On September 7, 1999, the committee conducted a hearing on the petition and declined by a majority vote to grant the relief requested. Aggrieved by the committee's decision, on September 20, 1999, Callahan filed a petition for judicial review in the Circuit Court of Leake County pursuant to Miss. Code Ann. § 23-15-961(7) and Miss. Code Ann. § 23-15-927 claiming that the committee disregarded and failed to act upon the allegations in his complaint. He also alleged for the first time that at the time of qualification, Greg Waggoner, as an employee of the Mississippi Department of Wildlife, Fisheries and Parks, was barred from running.

¶5. The Democratic Executive Committee moved to dismiss Callahan's petition stating that his claim, challenging the qualification of Waggoner, was time barred under Miss. Code Ann. § 23-15-961, and asserted that the circuit court was without jurisdiction to hear the complaint because Waggoner's qualification was never presented in the petition filed before the Committee. Waggoner filed an answer simply denying the allegations in Callahan's complaint.

¶6. On October 11, 1999, the court entered an order observing that the parties had stipulated that there were no questions of material fact and that the sole question of law was whether Waggoner was qualified to run for the office of Sheriff. The court order granted the motion to dismiss filed by the Democratic Executive Committee and concluded that Miss. Code Ann. § 49-1-19 did not disqualify Waggoner from running for Sheriff of Leake County. Aggrieved by the court's decision, Callahan timely filed this appeal, claiming error in the court's failure to allow him to proceed against the Democratic Executive Committee and in the court's ruling on the merits.[1]

## II.

¶7. The sole issue we address in this case is whether Waggoner can serve as sheriff of Leake County in harmony with Miss. Code Ann. § 49-1-19. The fact that Callahan was not allowed to proceed against the Democratic Executive Committee pursuant to Miss. Code Ann. § 23-15-961 (1999 ) is irrelevant and is, therefore, not addressed by this Court.[2]

¶8. In reviewing questions of law, this Court proceeds de novo. *Cummings v. Benderman*, 681 So. 2d 97, 100 (Miss. 1996) (citing *Bilbo v. Thigpen*, 647 So. 2d 678, 688 (Miss. 1994); *Cooper v. Crabb*, 587 So. 2d 236, 239 (Miss. 1991); *Harrison County v. City of Gulfport*, 557 So. 2d 780, 784 (Miss. 1990)).

¶9. We have long held that where a statute is plain and unambiguous there is no room for construction. Only when a statute is unclear or ambiguous should we look beyond the language of the statute in determining the Legislature's intent. *Kerr-McGee Chem. Corp. v. Buelow*, 670 So. 2d 12, 17 (Miss. 1996); *Allred v. Webb*, 641 So. 2d 1218, 1222 (Miss. 1994); *Clark v. State ex rel. Miss. State Med. Ass'n*, 381 So. 2d 1046, 1048 (Miss. 1980). Because Callahan asks this Court to exercise a legislative prerogative by prescribing a sanction not authorized by statute for the violation of a prohibition against political activity, we cannot grant the relief he requests.

¶10. Miss. Code Ann. § 49-1-19 as it existed at all times pertinent to this action read in pertinent part:

(1) No member of the commission, the executive director, administrative officer, employee, supervisor or conservation officer shall be active in any manner for or on behalf of his own candidacy

or the candidacy of any candidate for any public office *during his term of office or employment with said department. Violation of this subsection shall constitute a Class II violation and upon conviction thereof the violator shall be punished as provided in Section 49-7-143 for each offense. A conviction shall render vacant the office or position of the violator.*

(emphasis added). Section 49-7-143 provides that Class II violations shall be punished by a fine of not less than $100 nor more than $500, or by imprisonment in the county jail for not less than sixty days nor more than six months, or by both fine and imprisonment.

¶11. Callahan argues that the punishment for violation of § 49-1-19 is not confined to the companion statute, Miss. Code Ann. § 49-7-143, which provides for misdemeanor penalties. The punishment, Callahan insists, rendering "vacant the office or position of the violator" disqualifies the violator from seeking an elected office.

¶12. He directs this Court to a number of other statutes which govern political activity of other state and municipal employees. Among these are Miss. Code Ann. § 43-1-13 (Welfare Department), § 45-3-11 (Mississippi Highway Safety Patrol), § 47-5-89 (State Correctional System), § 77-1-25 (Public Service Commission), and § 21-31-27 and § 21-31-75 (Civil Service Employees). Each of these statutes places political restrictions upon persons, otherwise eligible to run for office, merely by virtue of their employment with a state agency or local governmental body. But Callahan asks this Court to read into Miss. Code Ann. § 49-1-19 and its penalty section, Miss. Code Ann. § 49-7-143, something which they do not say.

¶13. Clearly, the provision rendering vacant the office or position of the violator, does not refer to Waggoner's new elective office as Sheriff. The provision prohibiting political activity refers to his office and employment as a conservation officer. Conservation officers hold an "office" pursuant to Miss. Code Ann. § 49-1-21(2) (1999), requiring them to "take and subscribe to the constitutional oath of the office" before assuming their duties. The express language in § 49-1-19 prohibits an employee from being active either in his own candidacy, or in the candidacy of another during his term of "office or employment." If an employee were active only in the latter, or were an unsuccessful candidate, there would be no elected office for the employee to vacate other than the employee's current office or position even though the statute would have been violated and a conviction obtained. Clearly, then, the vacated office or position spoken of in the statute is the office or position held not the one sought.

¶14. Thus, there is no statutory direction to declare a candidate unqualified to run or, as is the case here, a duly elected candidate unqualified for office. Neither do our precedents dictate such a result.

¶15. This case does not present the same situation we faced in *Meeks v. Tallahatchie County,* 513 So.2d 563 (Miss. 1987). In *Meeks*, a county election commissioner sought election to a position as a Justice Court Judge in the same election in which he served as the Chairman of the Elections Commission. The primary issue there was whether he could be a candidate after having resigned from office despite the statutory prohibition against candidacy in any election "for which he might have been elected or with reference to which he acted" as an election commissioner. Miss. Code Ann. § 23-15-217 (Supp. 1986).

¶16. The statute there, unlike the one here at issue, explicitly prohibited him from being a candidate and, more importantly, dictated that ***"all votes cast for any such person at such election shall be illegal and shall not be counted."*** *Id.* (emphasis added).The clear intent there was to prevent the candidacy and election. There was no prescription that a violator be removed from the office of election commissioner or

suffer any other penalty. It was not a general prohibition against political activity. That statutory scheme is of a different stripe than that concerning officers and employees of the Mississippi Department of Wildlife, Fisheries, and Parks.

¶17. While there may be sound public policy reasons for preventing those engaged in law enforcement from engaging in political activity, that public policy is easily served by decreeing that those so engaged must give up the job rather than the political activity. That is the remedy that the Legislature has chosen. Clearly, we have no general policy against law enforcement officers engaging in political activity. Our sheriffs, constables, and, in some instances, town marshals are elected. There is no prohibition against political activity by them, or their deputies. Whatever the motivation for the prohibition against persons employed in conservation and public safety engaging in political activity, however, it is not within the purview of this Court to extend the scope of that prohibition beyond that established by the Legislature. The Legislature has provided that one violating the prohibition here involved may be convicted of a misdemeanor and shall lose his or her job with the Department. We are powerless to create and apply a greater punishment.

¶18. The Supreme Court of Appeals of West Virginia addressed this very issue when a law enforcement officer running for sheriff violated the applicable statute prohibiting political activity in *State ex rel. Sowards v. County Comm'n,* 474 S.E.2d 919 (W.Va. 1996). Section 7-14-15 of the West Virginia Code read in pertinent part:

> [N]o deputy sheriff covered by the provisions of this article shall engage in any political activity of any kind, character or nature whatsoever, except to cast his vote at any election or shall act as an election official in any municipal, county or state election. *Any deputy sheriff violating the provisions of this section shall have his appointment vacated and he shall be removed, in accordance with the pertinent provisions of this section.*

(emphasis added).

¶19. Although confronted with the same argument that violators should be disqualified from their elected office, the West Virginia Court declined to adopt this position. *Sowards,* 474 S.E.2d at 929. Strictly interpreting the statutory language and the penalty enumerated above, the Court refused to impose additional sanctions that were not explicitly provided by the Legislature, stating: "We believe W. Va. Code, 7-14-15... captures all the Legislature concluded was necessary to give effect to its regulation, and we see no reason for inferring any additional power on the courts." *Id.*

¶20. Further, the West Virginia Court recognized two constitutional concerns that we must not overlook here: the right to seek public office and the right of citizens to vote for the candidates of their choice. *Id*. at 927. In addressing the first issue, the Court acknowledged the need to regulate the political activity of law enforcement officers, but concluded nonetheless, that this need does not outweigh an individual's First Amendment right to participate in political discussions and activities. *Id.* at 929. While also concerned with the public policy interests in removing the implication of impropriety from law enforcement, the Court held that a mere violation, absent bribery, fraud, intimidation or a *clear* constitutional or statutory disqualification, was insufficient to set aside an election. *Id.*

¶21. In addressing the second issue, the West Virginia Court declined to use its judicial authority to take a candidate off the ballot after the voters expressed their preference for the candidate. Because removal effectively disenfranchises voters, the Court believed it should be "sparingly used" wherever possible, as

voters had a right to expect that their electoral choices would be honored by the State. *Id.* at 929-30. We believe that the voters of Mississippi have the right to expect the same.

¶22. Finally, Callahan cites *Bullock v. Mississippi Employment Sec. Comm'n,* 697 So.2d 1147 (Miss. 1997) in support of his position. His reliance is misplaced. In *Bullock* this Court was charged with interpreting provisions in Miss. Code Ann. § 21-31-27 and § 21-31-75, which preclude municipal civil service employees from engaging "in any political campaign as a representative of any candidate." This case said no more than a civil service employee may be fired for offending the political activity prohibition against being a candidate for office. Because the statute at issue in *Bullock* barred an administrative employee from political activity, this Court found the employee's dismissal to be proper. *Bullock*, 697 So.2d at 1151.

¶23. The statute did not prohibit administrative employees from seeking a public office. We held that the political activity was good cause for discharge such that the employee was not entitled to unemployment benefits. *Id.* To paraphrase the West Virginia Court, it is one thing to disqualify a candidate from being a conservation officer, it is quite another to disqualify a nominated candidate from being elected sheriff. The voters have a right to expect that their electoral choices will be honored. 474 S.E.2d at 929.

## III.

¶24. We conclude that § 49-1-19 prohibits convicted violators from continuing to serve in their office or position with the Mississippi Department of Wildlife, Fisheries, and Parks. A violation subjects them to a charge for a misdemeanor. However, it does not disqualify them from seeking or holding a political office. For these reasons, we affirm the judgment of the court below.

¶25. **AFFIRMED**.

> **PRATHER, C.J., PITTMAN, P.J., McRAE, SMITH, MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR.**

1. Pursuant to the provisions of Miss. Code Ann. §§ 23-15-929 and 23-15-131 a Special Tribunal consisting of an appointed circuit judge, Honorable John T. Kitchens, and the Leake County Election Commission was impaneled. Thereafter, the parties stipulated the facts and, therefore, the Election Commission was not needed. The Special Tribunal is referred to herein as "the court."

2. Waggoner filed no motion to dismiss, and apparently the trial court did not address whether the contest of his qualifications for office was timely under the procedural vehicle chosen by Callahan. We do not address that here.